UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-194 (EGS) |
| v. | : | |
| CHARLES COLLIER | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Tangible Evidence. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding these motions.

### I. BACKGROUND

While on patrol during a midnight tour on April 24, 2005, Metropolitan Police Department Officers received a call to respond to a three-car accident with injuries in the 1600 block of First Street, NW, in the District of Columbia. When the officers arrived, the defendant, Charles Collier, was standing outside a car whose driver was trapped inside. The defendant told officer Robert Glenn that he had been a passenger in the vehicle. Glenn took the defendant's driver's license and went to check on other victims.

As other emergency equipment arrived, two citizens that were not involved in the accident walked up to Glenn and told him that they had seen the defendant get out of a damaged automobile with a pistol in his hand. They claim to then have seen him put the pistol in the waist band of his pants. They pointed the defendant out as "the guy standing next to the mailbox."

Officers then approached the defendant. When the defendant came over, Glenn ushered him along by placing his hand on the small of the defendant's back. Glenn immediately felt a gun in the waistband, and placed the defendant in handcuffs. At the same time, an officer removed a loaded 9mm pistol from the defendant's waistband.

The defendant has been charged with unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g). He now moves to suppress all tangible evidence seized, arguing that the officers had neither reasonable suspicion to stop, nor probable cause to arrest him. The defendant's motion should be denied in full.

## II.  DISCUSSION

**A.   THE OFFICERS NEITHER STOPPED NOR SEIZED THE DEFENDANT.**

As an initial matter, the Government notes that the officers in this case did effectuate *any* sort of stop that would have triggered the protections of the Fourth Amendment. Evidence will demonstrate at a hearing in this matter that the officers never "stopped" the defendant. The officers, responding to an accident, in public, with several civilians, police officers, and emergency personnel nearby, merely approached the defendant in order to speak with him. Such an approach did not create a situation to trigger the protections of the Fourth Amendment.

The D.C. Circuit has stated that it is perfectly lawful for agents to approach an individual and ask him if he is willing to answer questions, *regardless of whether* the agents possessed reasonable suspicion. See, e.g., United States v. Winston, 892 F.2d 112, 117 (D.C. Cir. 1989) (quoting United States v. Carrasquillo, 877 F.2d 73, 76 (D.C. Cir. 1989)). Discussing constitutional arguments raised with regard to the more common (and perhaps more intrusive) contacts with individuals at train stations and other public transportation facilities, the Circuit has more colorfully stated the standard:

> To engage in any extended discussion of these arguments would be not only replowing the same ground previously turned in the cited cases and others referenced within them, it would be to plow once more in ground that has been turned, harrowed, furrowed, seeded, and is now producing a luxuriant crop. Therefore, we commend to the interested reader the prior decisions and simply observe once more that an encounter between a police officer and a citizen, involving no more than approach, questioning, and official identification, does not constitute a seizure and does not require probable cause, articulable suspicion, or any other kind of objective justification.

United States v. Smith, 901 F.2d 1116, 1118 (D.C. Cir. 1990) (internal quotation marks and citation omitted). Here, upon approaching the defendant, an officer merely placed a hand on the small of the defendant's back and felt what immediately was perceived to be a firearm. Once the officer felt the firearm – an object whose identity was instantly apparent – the officer possessed the requisite probable cause for the arrest of the defendant.

**B.    IN THE ALTERNATIVE, THE OFFICERS POSSESSED REASONABLE SUSPICION TO STOP AND SEIZE THE DEFENDANT.**

*1.    The totality of the circumstances provided the officers with reasonable suspicion to stop the defendant.*

Even assuming that the officers "seized" the defendant for the purposes of the Fourth Amendment, the officers' actions were permissible, and the defendant's arrest was lawful. Terry v. Ohio, 392 U.S. 1 (1968), permits police officers to temporarily "seize" or detain a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, that require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be *certain* that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a

reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994). Furthermore, a stop under Terry has occurred when either an officer physically lays a hand on an individual, or where the officer asserts his authority and the individual submits to that show of authority. California v. Hodari D., 499 U.S. 621, 627 (1991).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. See United States v. Sokolow, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

Here, the officers received information from two individuals who stated that they both had seen the defendant put the pistol in the waistband of his pants. The individuals, in the presence of the officers, were able to direct the officers' attention to where the defendant was located. The information received from the officers clearly gave the officers reasonable suspicion that criminal activity was afoot.

That the informants in this case did not wish to give their names to the police is of no moment. A tipster who gives his information in person to the police is not truly anonymous, even if he does not give his name. See, e.g., United States v. Thompson, 234 F.2d 725, 728-29 (D.C. Cir. 2000). In Thompson, the D.C. Circuit found that a tipster's informing the police in person made his

4

report inherently more trustworthy than the informant in <u>Florida v. J.L.</u>, 529 U.S. 266 (2000).[1] Moreover, the D.C. Circuit found both that the informant was able to indicate that his identification was based on first hand observation, and that the proximity of his observation suggested that it would prove accurate. See <u>Thompson</u>, 234 F.3d at 729. Such is similarly the case here; both informants indicated that they had personally seen the defendant with the firearm only moments before. As a result, the identifications of the defendant provided the officers with reasonable suspicion to approach and briefly detain the defendant.

*2.   Once he was detained, the officers lawfully searched the defendant.*

The defendant finally argues that the officers unlawfully searched the defendant without a warrant. The court should reject this argument. Incident to a <u>Terry</u> stop, the police may conduct a "protective search for weapons" if they "possess[ ] an articulable suspicion that an individual is armed and dangerous." <u>Michigan v. Long</u>, 463 U.S. 1032, 1034 (1983) (citing Terry, 392 U.S. at 24). Here, based on the information received from the informants, the officers had an articulable suspicion that the defendant was armed. As such, they were permitted to search the defendant's person for weapons.

### III. CONCLUSION

In light of the foregoing, the defendant's motion should be denied in full.

---

[1] In <u>J.L.</u>, an anonymous caller had told the Miami-Dade police that a young Black man, standing at a particular bus stop and wearing a plaid shirt, had a gun. When the police went to investigate they saw three Black males there, one of whom, 15 year-old J.L., was wearing a plaid shirt. Upon frisking him, the police discovered a gun. See <u>J.L.</u>, 529 U.S. at 268. The Supreme Court, upon those facts, held that the police did not have reason to believe that the suspect had possessed a firearm, or that the officers possessed suspicion to stop and frisk him. <u>Id.</u> at 273-74. The Court held that the police could not permissibly rely upon "the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the suspect]." <u>Id.</u> at 1379.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
ELLIOT WILLIAMS
Special Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 4th Street, N.W., Room 4108
Washington, DC 20530
(202) 514-5241