**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :     **Criminal No. 05-194 (EGS)** |
| | : |
| **CHARLES R. COLLIER,** | : |
| | : |
| **Defendant.** | : |

---

## SUPPLEMENTAL MEMORANDUM IN SUPPORT
## OF MOTION TO SUPPRESS TANGIBLE EVIDENCE

Mr. Charles R. Collier, the defendant, through undersigned counsel, respectfully submits the following additional points and authorities in support of his Motion to Suppress Tangible Evidence.

### Factual Background

Mr. Collier is charged in a one count indictment with unlawful possession of a firearm by a person convicted of a crime punishable by a term of imprisonment exceeding one year.  The charge arose out of an incident that occurred on April 24, 2005. Mr. Collier filed a motion to suppress the tangible evidence recovered on that date because it was obtained in violation of his Fourth Amendment rights, and the Court held a hearing on the motion on September 22, 2005.  At that hearing, the government called one witness, Officer Eric Hairston, who testified to the following.

On April 24, 2005, at about 5:45 a.m., Officer Hairston

responded to a three-car traffic accident in the 1600 block of
1st Street, N.W.  Tr. 10.[1]  While on the scene of the accident,
Officer Hairston saw two individuals standing approximately 15 to
20 feet from the accident.  Tr. 11.  These individuals were not
in cars, and Officer Hairston had no means of identifying them.
Tr. 19.  Officer Hairston approached them and asked them if they
had seen the accident.  Tr. 12.  The individuals told Officer
Hairston that they had not seen the accident, but had heard it.
Tr. 12.  After talking with Officer Hairston for a while, these
individuals whispered to the officer that they had seen the man
who was then standing by a mailbox get out of the car with the
driver that was trapped and saw the man by the mailbox put a gun
in his waistband.  Tr. 12.  The two individuals provided this
information to Officer Hairston together, at the same time.  Tr.
19.  After providing the information, the individuals asked the
officer not to go directly to the man by the mailbox, because
they did not want him to know that they had given the
information.  Tr. 12.  When Officer Hairston asked, these
individuals refused to give their names or any other identifying
information.  Tr. 19.

Officer Hairston had no other information that Mr. Collier
had done anything wrong.  Tr. 18, 24.  Based only on the

---

[1]All transcript citations are to the September 22, 2005,
motions hearing transcript.

2

information from the unidentified individuals, Officer Hairston
and two other officers, Officer Glen and Officer Heraud, stopped
Mr. Collier.  Tr. 13, 25.   When the officers stopped Mr.
Collier, they did not know whether or not the individuals who
provided the information would stay where they were or would
leave the scene.  Tr. 22.

The three officers – all of whom were in uniform –
approached Mr. Collier.  Tr. 13.  Officer Hairston testified that
when the officers approached Mr. Collier they did not have their
weapons drawn because Mr. Collier "didn't pose any type of
threat."  Tr. 24.  Nonetheless, the officers told Mr. Collier to
put his hands behind his back and told him that he was being
stopped.  Tr. 13, 23.  The officers then put Mr. Collier's hands
behind his back.  Tr. 14.  As the officers handcuffed Mr.
Collier, they felt "what appeared to be a pistol."  Tr. 14.  The
officers then found a gun in Mr. Collier's waistband.  Tr. 15.


## **Argument**

A police officer who lacks probable cause to make an arrest
may nonetheless stop an individual and frisk him for weapons if
the officer has a reasonable articulable suspicion that the
person is involved in criminal activity and that the person is
armed and dangerous.  Terry v. Ohio, 392 U.S. 1 (1968).  A "stop
and frisk" is constitutionally valid, however, only under those

limited circumstances.  As the Supreme Court stated:

> [W]here a police officer observes unusual
> conduct which leads him reasonably to
> conclude in light of his experience that
> criminal activity may be afoot and that the
> persons with whom he is dealing may be armed
> and presently dangerous, where in the course
> of investigating this behavior he identifies
> himself as a policeman and makes reasonable
> inquiries, and where nothing in the initial
> stages of the encounter serves to dispel his
> reasonable fear for his own or others'
> safety, he is entitled for the protection of
> himself and others in the area to conduct a
> carefully limited search of the outer
> clothing of such persons in an attempt to
> discover weapons which might be used to
> assault him.

Id. at 30.

When a police officer has made no personal observations of
unusual conduct and can corroborate no more than the identifying
information supplied by an anonymous tip, such a tip is not
sufficient to provide the necessary reasonable suspicion to
justify a Terry stop and frisk.  Florida v. J.L., 529 U.S. 266
(2000); see United States v. Thompson, 234 F.3d 725 (D.C. Cir.
2000) ("The Supreme Court . . . held [in J.L.] that a search
based upon an anonymous tip, only innocent details of which have
been corroborated, is not reasonable and the evidence it produced
is not admissible.").  As the Court noted, "[u]nlike a tip from a
known informant whose reputation can be assessed and who can be
held responsible if her allegations turn out to be fabricated . .
. 'an anonymous tip alone seldom demonstrates the informant's

4

basis of knowledge or veracity[.]'" <u>J.L.</u>, 529 U.S. at 270
(citations omitted).  Although a "suitably corroborated"
anonymous tip may provide the necessary reasonable suspicion for
a <u>Terry</u> stop, <u>J.L.</u>, 529 U.S. at 270, the tip at issue here was
not corroborated.

Here, the officers possessed no more than the type of
information provided by the informant in <u>J.L.</u>  Although the
informants here appeared in person before the officer, rather
than by telephone, they were nonetheless "unknown and
unaccountable" because they refused to give identifying
information to the officer.  <u>J.L.</u>, 529 U.S. at 271.  The District
of Columbia Circuit, has found that a tipster who approached a
police officer in his car was "more accountable, and therefore
more reliable, than was the anonymous caller in <u>J.L.</u>," because
such tipster put his anonymity at risk.  <u>Thompson</u>, 234 F.3d at
729.  In <u>Thompson</u>, the tipster was in a car and the court found:
"The informant in this case subjected himself to ready
identification by the police when he approached them in his car;
the police need only have asked for his identification or simply
noted the license plate on his car."  <u>Id.</u>  Here, however, the
informants were not in a car and affirmatively refused to
identify themselves.  Because there was no means to identify
them, these informants were not, as the informant in <u>J.L.</u>, at
risk of potential criminal prosecution if their information

proved false.  See Id.  Moreover, the stop and frisk in Thompson
was upheld not only because the informant was identifiable, but
also because the police themselves observed the defendant engaged
in suspicious conduct.  Id. (police observed defendant hiding
behind fence, peering around edge of fence near nightclub in
parking lot of closed restaurant at 3:00 a.m.).

The Holmes case cited by the government at the September
22nd hearing is also distinguishable.  See United States v.
Holmes, 360 F.3d 1339 (2004).  In Holmes, although the tipster
was a pedestrian, the court found that the pedestrian was not
less accountable than the motorist in Thompson because the
pedestrian remained on the scene while the police backup arrived
and investigated the tip.  Id. at 1344.  The Court found that the
police officers could have asked – and presumably obtained – the
pedestrian's identification.  Id.  Here, the officer did ask, but
the pedestrian refused to provide the information – refusing to
become accountable.

The anonymous tipsters in this case merely pointed out Mr.
Collier and claimed to have seen him with a gun.  The ability of
the anonymous informants to identify Mr. Collier added nothing to
their credibility.  As the Supreme Court has held:

> An accurate description of a subject's
> readily observable location and appearance is
> of course reliable in this limited sense:  It
> will help the police correctly identify the
> person whom the tipster means to accuse.
> Such a tip, however, does not show that the

6

> tipster has knowledge of concealed criminal
> activity.  The reasonable suspicion here at
> issue requires that a tip be reliable in its
> assertion of illegality, not just in its
> tendency to identify a determinate person.
> Cf. 4 W. LaFave, Search and Seizure § 9.4(h),
> p. 213 (3d ed. 1996) (distinguishing
> reliability as to identification, which is
> often important in other criminal law
> contexts, from reliability as to the
> likelihood of criminal activity, which is
> central in anonymous-tip cases).

<u>J.L.</u>, 529 U.S. at 272.

The police here corroborated no information beyond the identification of Mr. Collier.  Such "bare-boned tips" are not sufficient to satisfy the Fourth Amendment.  <u>J.L.</u>, 529 U.S. at 273.  In fact, in another case before this Court, the government conceded that an anonymous tip – which was supplied by Metro patrons to a Metro station manager – that a man was on a Metro train with a gun was not sufficient to justify a stop.  <u>See</u> <u>United States v. Wiggins</u>, 211 F.Supp.2d 81, 87-89 (D.D.C. 2002).

One of the problems with anonymous tips for which only identifying information can be confirmed is that such tips leave every citizen vulnerable to a police stop and search based on the word of anyone who happens to hold a grudge against them.  <u>See</u> <u>J.L.</u>, 529 U.S. at 272 ("Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun.").  If the search at issue here is upheld as

7

constitutional, then any citizen could harass another citizen by
approaching a police officer on the street, pointing out the
targeted citizen and claiming to have seen the target with a gun
– if the facts here are held constitutional, any such tip would
result in the target being stopped and handcuffed by the police.
Such searches are unreasonable and the type of police activity
that the Fourth Amendment was designed to prevent.

At the hearing in this matter, the government argued that
the informants here were not truly anonymous because the were
still on the scene after Mr. Collier was stopped and searched.
However, at the time he stopped and searched Mr. Collier, Officer
Hairston did not know whether or not the informants were still on
the scene or whether they planned to stay in the area – further
distinguishing the facts at issue here from the facts in Holmes.
The search must be judged based on what the officers knew before
the search was conducted.  J.L., 529 U.S. at 271 ("The
reasonableness of official suspicion must be measured by what the
officers knew before they conducted their search."); see also
United States v. Di Re, 332 U.S. 581, 595 (1948) ("[A] search is
not to be made legal by what it turns up.  In law it is good or
bad when it starts and does not change character from its
success.").  Thus, Officer Hairston's testimony that the
informants were present after Mr. Collier's arrest cannot be
considered in determining the lawfulness of the stop and search

of Mr. Collier.

Because the government has failed to establish that the officers had a reasonable articulable suspicion to support the stop and search of Mr. Collier, the evidence seized must be suppressed as the fruit of the unlawful stop and search of Mr. Collier. <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant Mr. Collier's Motion to Suppress Tangible Evidence.


Respectfully submitted,


/s/

_____

Mary Manning Petras
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500